J. EDGAR WILKINSON *vs.* CHARLES H. McINTYRE,
conservator, & others.

Middlesex.     November 30, 1925. — January 6, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Guardian. Probate Court*, Jurisdiction, Guardianship proceedings, Appeal. *Words*, "Person aggrieved."

A petition, by one appointed by a court of competent jurisdiction in another State to be guardian of one there domiciled, seeking to have letters of guardianship granted to him under G. L. c. 201, § 30, as to property situated in this Commonwealth, is not adverse to any right of the ward, and the Probate Court has jurisdiction to grant it without notice to the ward, to one who had been appointed conservator of his property, to his heirs presumptive, or by publication.

Neither one who, previous to the presentation of the petition above described, had been appointed conservator of the property of the ward in this Commonwealth and who by a decree appointing the guardian upon such petition is directed to transfer property of the ward in his possession to the guardian thereby appointed, nor alleged remote "heirs presumptive" of the ward are persons aggrieved by the decree appointing the guardian upon the petition above described and they are not entitled under G. L. c. 215, § 9, to appeal therefrom.

PETITION, filed in the Probate Court for the county of Middlesex on February 20, 1925, for the appointment of the petitioner as guardian of William Gray Brooks of Philadelphia in the State of Pennsylvania.

On March 6, 1925, by order of *Leggat*, J., the petition was granted. The decree recited that the record of the Court

of Common Pleas No. 2 in and for Philadelphia County, "a court of competent jurisdiction in said State of Pennsylvania," was before the court. Other material facts are described in the opinion.

An appeal from the decree was entered. by Charles H. McIntyre, who, by a decree entered by order of *Leggat*, J., on October 29, 1924, had been appointed temporary conservator of the estate in Massachusetts of the said Brooks, and by a decree entered by order of *Lawton*, J., on November 19, 1924, had been appointed conservator. In the respective petitions for the appointment of a temporary conservator and a conservator, it was recited that William Gray Brooks had no wife and was without issue, that the names and addresses of his heirs apparent and presumptive were then unknown to the petitioner, and that their degree of kinship was remote.

Adèle Brooks Fort, Laura Louisa Letzer and Belle C. Huegelmeier, representing themselves to be "heirs presumptive and next of kin" of the ward, also appealed from the decree appointing the guardian.

The case was submitted on briefs.

*C. H. McIntyre & A. L. Stinson*, for the appellants.

*G. S. Fuller*, for the appellee.

PIERCE, J. This is an appeal by the conservator and heirs presumptive from a decree of March 6, 1925, by the Probate Court for the county of Middlesex, granting letters of guardianship on the Massachusetts estate of William Gray Brooks, a resident of Philadelphia, in the State of Pennsylvania.

The pertinent facts are as follows: The conservator, Charles H. McIntyre, *ex parte*, on his own petition, on October 29, 1924, was appointed by the Probate Court for the county of Middlesex temporary conservator, to have the charge and management of the property, situated in the county of Middlesex, of William Gray Brooks, of Philadelphia, in the State of Pennsylvania, on the ground that the said Brooks "has become incapacitated by reason of advanced age — and mental weakness to properly care for his property." On November 11, 1924, McIntyre, purporting to act in his capacity as such temporary conservator, filed in the Court of Common Pleas No. 2, in Philadelphia, a bill in

equity against several persons and corporations, alleging that William Gray Brooks was "feeble minded and unable to properly care for his property"; that he was the victim of designing persons; that large sums of money had been secured and extorted from him by certain named persons; that certain other named persons had fraudulently secured the transfer of "all or the large part" of his personal property; and stating that he was about to file a petition for the appointment of a guardian of the estate of William Gray Brooks as a feeble minded person under the provision of the act of May 28, 1907, Penn. Laws, 292. On the prayer of the bill for an injunction against the transfer of securities obtained or to be obtained from Brooks, a "special injunction" issued to continue until a hearing on Thursday, November 13, 1924.

On November 12, 1924, McIntyre filed in the Court of Common Pleas a petition for the appointment of a guardian of William Gray Brooks, alleging that Brooks "has become so feeble minded and mentally defective that he is unable to take care of his property and in consequence thereof is liable to dissipate or lose the same and to become the victim of designing persons." Notice of the hearing on the petition was duly served on Brooks, and he was present at the hearing held on December 11, 1924. On the day last named, by a decree of the court it was "adjudged and decreed that the said William Gray Brooks is not able owing to weakness of mind to take care of his property, and J. Edgar Wilkinson is hereby appointed guardian of the property and estate of the said William Gray Brooks upon entering a bond in the sum of $90,000 with surety to be approved by the court." On the day following, Wilkinson qualified and accepted the office by filing a surety bond in the sum of $90,000.

On December 26, 1924, the injunction issued November 11, 1924, was amended so as to permit the enjoined persons and corporations, any or all of them, to turn over and deliver to J. Edgar Wilkinson, Esquire, guardian, all moneys, property and things of value now in their possession and belonging to the said William Gray Brooks. Meanwhile on November 19, 1924, Charles H. McIntyre on his own petition, after personal

service on William Gray Brooks, had been appointed by the Probate Court of Middlesex County and had accepted the office of conservator of William Gray Brooks, to have the charge and management of the property of said Brooks in the county of Middlesex, subject to the direction of the court.

On February 11, 1925, the said Court of Common Pleas No. 2, upon application by said Wilkinson, entered a decree authorizing him as guardian for the property and estate of William Gray Brooks to file an application in the Middlesex Probate Court "for letters of guardianship on said estate; additional security to be entered herein in the sum of $60,000"; and on February 16, 1925, said Wilkinson filed in said court additional surety bond in the said sum. On February 20, 1925, J. Edgar Wilkinson of Philadelphia, in the State of Pennsylvania, as guardian of William Gray Brooks of Philadelphia, in the State of Pennsylvania, filed a petition in the Middlesex Probate Court for letters of guardianship of the estate of Brooks in the county of Middlesex and produced to the Probate Court "full and complete and duly exemplified or authenticated transcript from the records of said Common Pleas Court No. 2 in and for Philadelphia County," a court of competent jurisdiction in Pennsylvania, showing that he had there been appointed such guardian and had given bond and security in double the value of the property of the ward Brooks. On March 4, 1925, Wilkinson filed in the Probate Court an authenticated copy of an additional surety bond for $30,000, which he had filed in the Philadelphia court, being a total amount of $180,000.

Without notice to the appellants, either of the petition or of its presentation to the Probate Court, the judge of probate *ex parte* found the allegations of the petition to be true; found "that a removal of any of the movable property or estate of said ward out of said Commonwealth will not conflict with the terms or limitations attending the right by which such ward holds the same"; and decreed, on March 6, 1925, that letters of guardianship issue to the petitioner, " which shall authorize him to care for and manage the real estate of said ward, to collect the rents and profits therefrom,

and to demand, sue for, and recover any such property, and to remove any of the movable property or estate of said ward out of this Commonwealth, and which shall order that any resident guardian, executor or administrator who has any of the estate of said ward to deliver the same to said petitioner." It is to be noted that the decree follows the form approved by this court.

The questions presented by the appeal are (1) Had the Probate Court, without publication or personal service of notice, jurisdiction to make the adjudication and enter the decree above set out? and (2) Were the appellants as conservator and remote heirs of William Gray Brooks aggrieved by the entry of the decree?

Every fact which a foreign guardian must prove to entitle him, under the provisions of G. L. c. 201, § 30, to receive from the Probate Court letters of guardianship of the estate of his ward in this Commonwealth, and which shall authorize him to care for and manage the real and personal property of such ward, to collect the rents and profits therefrom, and to demand, sue for and recover any such property, and to remove any of the movable property or estate of such ward out of this Commonwealth, if such removal will not conflict with the terms and limitations attending the right by which the ward holds the same, has been found to exist, by the Probate Court; and that court in pursuance of the authority conferred by the statute has directed the "resident guardian" (conservator) to deliver the same to the foreign guardian. Manifestly the Probate Court for the county of Middlesex had jurisdiction under G. L. c. 201, §§ 30, 31, to order the transfer of property of the estate of the ward, upon the facts found, to the foreign guardian, after notice to all persons interested, that is to say to all persons having adversary interests in the property. *Mohr* v. *Manierre*, 101 U. S. 417; 423.

The petition of the foreign guardian and the decree of the Probate Court were not adverse to any right of the ward. The decree operated upon the right to obtain possession of the estate. It did not, and did not purport to, affect the title of the ward or the title or right to possession of persons

holding property adverse to the ward. As to such interest it gave to the foreign guardian the right to sue for and collect the estate of the ward in the name of the ward. As was said in *Mitchell* v. *Peoples Savings Bank*, 20 R. I. 500, 507: "The statute, instead of depriving her of her property, provides a remedy by which, through her guardian, she may obtain possession of it. In its operation it goes no further than to change the custody of the property; it does not direct that it should be converted. The title to the property is not changed." The record disclosing no adversary interest to be affected by the decree, notice by publication was not essential to the jurisdiction of the court. *Mohr* v. *Manierre*, *supra*. *Scarf* v. *Aldrich*, 97 Cal. 360, 365. *Mohr* v. *Porter*, 51 Wis. 487, 489. *Fidelity Trust Co.* v. *Davis Trust Co.* 74 W. Va. 763.

Were the appellants aggrieved? G. L. c. 215, § 9, reads "A person aggrieved by an order, decree or denial of a probate court . . . may . . . appeal from the same to the Supreme Judicial Court." It was said in *Lawless* v. *Reagan*, 128 Mass. 592, at page 593, " . . . to give a right of appeal from the judgment of the court, it must appear that the party appealing has some pecuniary interest, or some personal right, which is immediately or remotely affected or concluded by the decree appealed from." Illustrative cases are collected therein.

The contention of the conservator that he is aggrieved because the decree deprived him of an opportunity to prove the "disqualification of the foreign guardian after his appointment," does not support his argument that as conservator "he has a pecuniary interest in and public and official duty toward this estate." It is plain a conservator as such has no pecuniary interest in the estate of his ward, and that no personal right of his is involved in the transfer of the property of his ward in his possession to that of the guardian appointed in the State where the ward resides. *Ensign* v. *Faxon*, 224 Mass. 145. *Monroe* v. *Cooper*, 235 Mass. 33, 34. The pecuniary interest or personal right of the alleged remote "heirs presumptive" is not affected by the decree in the slightest degree, and no possible future interest of theirs

in Brooks's estate is affected by the change in the possession and management of the estate from the conservator to the guardian.

It results that the decree must be affirmed.

*Ordered accordingly.*