NEW ENGLAND MERCHANTS NATIONAL BANK OF BOSTON vs.
THE CENTENARY METHODIST CHURCH & others.

Suffolk.    February 10, 1961. — April 3, 1961.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Trust Company,* Conversion into national bank. *National Bank,* Conversion from trust company, Consolidation of banks. *Bank and Banking. Trust,* Who may act as trustee. *Fiduciary.*

Where a trust company which had been nominated in a will as trustee thereunder and had been appointed by the Probate Court and was serving as such converted into a national bank under 12 U. S. C. (1958) § 35 and consolidated with another national bank under 12 U. S. C. (1958) § 215 (Supp. I, 1959), and both national banks had permits to act as fiduciary under 12 U. S. C. (1958) § 248 (k), the consolidated national bank was entitled to act as trustee under the will without a new appointment by the Probate Court.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on January 10, 1961.

The suit was reserved and reported by *Spiegel,* J.

*Richard Wait,* for the plaintiff.

*Charles W. Blood,* for the defendant Auburndale Congregational Church.

WILKINS, C.J.    By this bill for declaratory relief New England Merchants National Bank of Boston seeks to ascertain whether it is entitled to act as trustee under the will of Clark Harwood, late of Newton, by reason of an appointment as such trustee of The New England Trust Company by the Probate Court for Middlesex County.    The defendants are the Attorney General and representatives of all interests under the will.    The case is reported without decision upon the bill and answers.

All the answers admit the allegations of the bill of complaint.    The defendant Auburndale Congregational Church (hereinafter called the defendant) contests any right of the plaintiff to act as trustee.    The Attorney General, a party

in interest because of charitable gifts for the "care, support, and welfare of poor and needy people" in that part of Newton called Auburndale, expresses doubt and prays that the court determine the question. The remaining defendants stand indifferent, and submit their rights to the court.

The New England Trust Company was incorporated by St. 1869, c. 182. Nominated as trustee in the will, the trust company received appointment on March 18, 1942, and has since served. In 1960 it was consolidated with The Merchants National Bank of Boston. This was accomplished in two transactions. First, on October 13, 1960, the stockholders of the trust company, pursuant to U. S. Rev. Stat. (1875) § 5154, 12 U. S. C. (1958) § 35,[1] voted to convert into a national banking association under the name of New England National Bank of Boston. On October 14 the Comptroller of the Currency, in accordance with § 35, issued a certificate that all the requisite statutes of the United States had been complied with, and authorized the commencement of the business of banking. Pursuant to § 11 (k) of the Federal Reserve Act, 12 U. S. C. (1958) § 248 (k),[2] the Board of Governors of the Federal Reserve

---

[1] § 35. "Organization of State banks as national banking associations. Any bank incorporated by special law of any State . . . may, by the vote of the shareholders owning not less than 51 per centum of the capital stock of such bank . . ., with the approval of the Comptroller of the Currency be converted into a national banking association, with any name approved by the Comptroller of the Currency: *Provided, however,* That said conversion shall not be in contravention of the State law. . . . When the Comptroller has given to such bank . . . a certificate that the provisions of this Act have been complied with, such bank . . . and all its stockholders, officers, and employees shall have the same powers and privileges and shall be subject to the same duties, liabilities, and regulations, in all respects, as shall have been prescribed by the Federal Reserve Act and the National Banking Act for associations originally organized as national banking associations. . . ."

[2] § 248. "Enumerated powers. The Board of Governors of the Federal Reserve System shall be authorized and empowered: . . . (k) . . . To grant by special permit to national banks applying therefor, when not in contravention of State or local law, the right to act as trustee, executor, administrator . . . or in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located. Whenever the laws of such State authorize or permit the exercise of any or all of the foregoing powers by State banks, trust companies, or other corporations which compete with national banks, the granting to and the exercise of such powers by national banks shall not be deemed to be in contravention of State or local law within the meaning of this chapter. . . ."

362                                                  342 Mass. 360

New England Merchants National Bank _v._ Centenary Methodist Church.

System granted to the converted bank authority to act as fiduciary when not in contravention of State law.   Then, under date of November 10, 1960, pursuant to 73 Stat. 460, 12 U. S. C. (1958) § 215 (Supp. I, 1959)[1] an agreement was made that the two banks should be consolidated under the charter of Merchants and under the title of New England Merchants National Bank of Boston.   The Comptroller of the Currency, following ratifying votes at separate meetings of the two bodies of stockholders, issued his certificate under 73 Stat. 460, 12 U. S. C. (1958) § 215 (b) (Supp. I, 1959), approving the consolidation as of December 31, 1960. The Merchants National Bank of Boston had previously acted as a fiduciary under a permit issued pursuant to § 11 (k).

---

[1] § 215.   "Consolidation of national banks or State banks with national banks.   (a) . . .   Any national banking association or any bank incorporated under the laws of any State may, with the approval of the Comptroller, be consolidated with one or more national banking associations . . . under the charter of a national banking association . . . .   (e) . . .   The corporate existence of each of the consolidating banks or banking associations participating in such consolidation shall be merged into and continued in the consolidated national banking association and such consolidated national banking association shall be deemed to be the same corporation as each bank or banking association participating in the consolidation.   All rights, franchises, and interests of the individual consolidating banks or banking associations in and to every type of property (real, personal, and mixed) and choses in action shall be transferred to and vested in the consolidated national banking association by virtue of such consolidation without any deed or other transfer. The consolidated national banking association, upon the consolidation and without any order or other action on the part of any court or otherwise, shall hold and enjoy all rights of property, franchises, and interests, including appointments, designations, and nominations, and all other rights and interests as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, and committee of estates of lunatics, and in every other fiduciary capacity, in the same manner and to the same extent as such rights, franchises, and interests were held or enjoyed by any one of the consolidating banks or banking associations at the time of consolidation, subject to the conditions hereinafter provided.   (f) . . .   Where any consolidating bank or banking association, at the time of the consolidation, was acting under appointment of any court as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, or committee of estates of lunatics, or in any other fiduciary capacity, the consolidated national banking association shall be subject to removal by a court of competent jurisdiction in the same manner and to the same extent as was such consolidating bank or banking association prior to the consolidation.   Nothing contained in this section shall be considered to impair in any manner the right of any court to remove the consolidated national banking association and to appoint in lieu thereof a substitute trustee, executor, or other fiduciary, except that such right shall not be exercised in such a manner as to discriminate against national banking associations, nor shall any consolidated national banking association be removed solely because of the fact that it is a national banking association."

Reduced to simplest terms, the issue is whether the plaintiff must seek a new appointment from the Probate Court. The plaintiff's argument in the negative, stated summarily, is that the conversion of the trust company into a national bank did not destroy its corporate entity; that it continued to be the same corporation; that in consolidating with Merchants, it did so by operation of a Federal statute providing that its corporate existence should continue in the consolidated bank, and that the consolidated bank should hold all appointments as trustee. 73 Stat. 460, 12 U. S. C. (1958) § 215 (e), (f), (Supp. I, 1959). The defendant in denying the plaintiff's right to act without a new appointment relies, in large measure, upon four cases of this court decided more than thirty years ago.

In *Commonwealth-Atlantic Natl. Bank, petitioner,* 249 Mass. 440, there were two petitions for the proof of wills, one by The Commonwealth-Atlantic National Bank of Boston, and the other by The First National Bank of Boston. Each instrument named as executor a Massachusetts trust company which later converted into a national bank under U. S. Rev. Stat. (1875) § 5154, as amended by 38 Stat. 258,[1] and thereafter[2] consolidated, under 40 Stat. 1043[3] and with the approval of the Comptroller of the Currency, with another national bank under the latter's charter. The holding on each petition was that the consolidated bank was not

---

[1] See now 49 Stat. 711, 12 U. S. C. (1958) § 35.

[2] The information in this footnote is from the original papers. In the first petition the Commonwealth Trust Company of Boston converted into The Commonwealth National Bank of Boston on May 21, 1923. Then on June 30, 1923, The Commonwealth National Bank of Boston and The Fourth-Atlantic National Bank of Boston consolidated under the latter's charter and took the name The Commonwealth-Atlantic National Bank of Boston.

In the second petition the International Trust Company was converted into The International National Bank of Boston on June 15, 1923. Then on July 18, 1923, The First National Bank of Boston and The International National Bank of Boston consolidated under the charter and name of the former.

At this time there was no statute authorizing a State bank to consolidate directly with a national bank. This procedure was first provided in 44 Stat., Part 2, 1224, 1226, § 3, added by c. 191, approved February 25, 1927. See now 73 Stat. 460, 12 U. S. C. (1958) § 215 (Supp. I, 1959), quoted footnote, p. 362.

[3] See now 73 Stat. 460, 12 U. S. C. (1958) § 215 (Supp. I, 1959), quoted footnote, p. 362.

entitled to appointment as executor. The opinion gives no heed to the interval of several weeks between the conversion and the consolidation in each case. Had there been no subsequent consolidation, one may doubt, notwithstanding an expressed distrust of the efficacy of Federal regulation, whether the same result would have been reached on the conversion alone. For a summary of the court's reasoning, we shall quote from the next case cited.

*Atlantic Natl. Bank, petitioner,* 261 Mass. 217, held, on facts similar to those in the first petition in the case just cited, that the consolidated bank was not entitled to account as trustee under a will or as conservator of an estate in place of the trust company which had been appointed by the Probate Court, but could account only de son tort. At pages 219–220, referring to the *Commonwealth-Atlantic Natl. Bank* case, it was said, "The grounds of that decision briefly stated were that there are fundamental distinctions as to being a fiduciary in accordance with our statutes under appointment by a probate court between a trust company organized under the laws of this Commonwealth and a national bank organized under the Acts of Congress. They are established under the laws of different jurisdictions. They owe allegiance to different sovereignties. They are controlled by different laws. They possess different powers. The national bank is not governed by the laws of this Commonwealth as to its corporate functions, duties and responsibilities. It is not subject to the same laws touching supervision and examination as to property held in a fiduciary capacity by government officials, nor as to liquidation. In these particulars the national bank is governed by a legislative body over whom this Commonwealth has no power. The reasons for the conclusion there reached are amplified in that decision with references to the pertinent and differing statutes, both State and Federal. They govern the present cases. The testator and court in appointing the trust company as trustee, and the court in appointing it as trustee and conservator, must be presumed to have had in contemplation its particular cor-

porate powers, duties and responsibilities.   By conversion
and consolidation the trust company has elected to remove
itself from the governing statutes of this Commonwealth
and to submit itself to those of the United States.   These
statutes make it a different corporation in material aspects
from the one appointed fiduciary by the Probate Court.''

In *Worcester County Natl. Bank, petitioner,* 263 Mass.
394, a national bank, which had been appointed administra-
tor of an estate by the Probate Court, and with which later,
pursuant to § 3 added to c. 209, 40 Stat. 1044, by 44 Stat.,
Part 2, 1224, a Massachusetts trust company consolidated
under the national bank's charter, was held still to be en-
titled to account as administrator.

*Worcester County Natl. Bank, petitioner,* 263 Mass. 444,[1]
dealing with the same consolidation as in the preceding case
cited, held that the consolidated bank was not entitled, as
''successor to'' the trust company which had previously
been appointed executor, to render a probate account.   At
pages 453–454, it was said: ''It is the duty of a court under
our jurisdiction, before appointing an executor, administra-
tor, trustee or other fiduciary, to inquire carefully as to his
character, integrity, soundness of judgment and general
capacity, and to make the appointment only after a favor-
able finding on these points.   That duty of inquiry is just
as imperative with respect to a trust company or national
bank as with respect to an individual.''   And, at page 455,
it was said: ''The trust arising from appointments to such
positions as executor, administrator and the like is highly
personal.   It is not commercial.   It is not contractual.   It
is not a property right.   It involves no pecuniary interest
on the part of the fiduciary. . . .   A strictly confidential
relationship of this nature cannot survive such a transmu-
tation as is wrought by the consolidation of a State bank
with a national banking association under the charter of
the latter in accordance with the terms of said § 3.   To

---

[1] Affirmed in *Ex parte Worcester County Natl. Bank,* 279 U. S. 347, on the
ground that the Act of Congress there considered did not purport to require
recognition of the consolidated bank as executor before it received a judicial
appointment as such.

treat the national banking association into which the State trust company has been consolidated as preserving the identity of the trust company in this particular would be contrary to the juridical conception and practice touching the appointment of such fiduciaries under the law of this Commonwealth.''

In *Worcester County Natl. Bank* v. *Commissioner of Banks,* 340 Mass. 695, 703, referring to three of these cases we said, ''They have since been confined in 'application to positions of trust requiring judicial approval and appointment.' *Deitrick* v. *Siegel,* 313 Mass. 612, 619. Whether they should be again reconsidered to determine if any further limitation should be made does not fall within the scope of our present duty.'' The issue confronting us is whether at this day the retention of even this confined application is reasonable.

We incline to the view that such retention is unreasonable. Whatever formerly may have been substantial grounds of distinction between national banks and State banks no longer can be said to obtain. One surely could not successfully contend that Federal bank regulation is less secure than State bank regulation. Such a distinction has been described as ''illusory.'' 74 Harv. L. Rev. 393, 399–400. A requirement of new judicial appointments would impose upon estates an expense incommensurate with any supposed advantage. In cases of a trustee under a written instrument such a requirement perhaps could necessitate a submission of the trust to a court for the first time. See G. L. (Ter. Ed.) c. 203, § 5. The defendant suggests that a testator (or settlor) might prefer ''another small trust company'' to ''a big national bank.'' We think that a more reasonable supposition would be that a testator or settlor would prefer the successor bank to an entirely different new appointee now to be selected. While cases may be imagined where the successor bank might not be a suitable fiduciary, adequate protection exists in the power of removal. 73 Stat. 460, 462, 12 U. S. C. (1958) § 215 (f) (Supp. I, 1959). In general, one would not expect that a judicial determination as to the fitness of a national bank

made as an incident to the approval of an appointment by a court would be even remotely comparable with the thoroughness and efficiency of consecutive Federal administrative supervision.

Most States now have statutes expressly providing that upon the consolidation or merger of a State bank or trust company with a national bank, the latter shall succeed automatically to any fiduciary positions held by the former. See Bogert, Trusts and Trustees (2d ed.) § 531 at pages 402–403; Scott, Trusts (2d ed.) § 96.7. Our Legislature has not enacted such an express provision, but in the reverse situation of a consolidation or merger of a national bank into a trust company, it has passed a statute with language, by implication at least, broad enough to embrace fiduciary appointments of the national bank. G. L. c. 172, § 44 (as amended through St. 1955, c. 275, § 1).[1] In reaching our result we need not discuss any constitutional question. See, however, *Worcester County Natl. Bank* v. *Commissioner of Banks,* 340 Mass. 695, 701.

The plaintiff argues that the Massachusetts bank cases relied upon by the defendant are factually distinguishable from the case at bar. We shall not develop that issue, because in underlying theory they are not. It is important that there be no obscure distinctions in this area of the law. A clear statement of the present law must be made. Such a statement we make in the light of the extensive development of banks, State and national, as fiduciaries in the last three decades and of the practical considerations already mentioned of the public and private interest arising out of that development.

Accordingly, we declare no longer to be applicable the restrictions on continuing identity contained in *Commonwealth-Atlantic Natl. Bank, petitioner,* 249 Mass. 440, *Atlantic Natl. Bank, petitioner,* 261 Mass. 217, and *Worcester*

---

[1] Section 44, as amended, provides in part, ''The continuing trust company into which a trust company, banking company or a national banking association shall have been consolidated or merged or into which a national banking association shall have been converted under this section shall be considered the same business and corporate entity as that of the consolidating or merging or converting institution, although the rights, powers and duties of the continuing trust company shall be those established by its charter.''

*County Natl. Bank, petitioner,* 263 Mass. 444. We hold that after the conversion the New England National Bank of Boston was not barred by any law of this Commonwealth from acting as trustee under the will of Clark Harwood. Upon the consolidation of the two national banks, no law of this Commonwealth purported to affect, much less could affect, the right of the consolidated bank, New England Merchants National Bank of Boston, to act as such trustee.

A decree is to enter declaring that New England Merchants National Bank of Boston is entitled to act as trustee under the will of Clark Harwood.

*So ordered.*